UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS WILTON
WILMORE, JR.,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

Case No. 2:16-cv-10475

District Judge Matthew Leitman

Magistrate Judge Anthony P. Patti

## <u>REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 15) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 13)</u>

**I.**  **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 15), **DENY** Plaintiff's motion for summary judgment (DE 13), and

**AFFIRM** the Commissioner's decision.

**II.**  **REPORT**

   Plaintiff, Louis Wilton Wilmore, Jr., brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for social security disability insurance

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 13), the

Commissioner's memorandum in opposition and cross motion for summary judgment (DE 15), and the administrative record (DE 9).

### A.     Background

Plaintiff filed his application for disability insurance benefits on August 27, 2009, alleging that he had been disabled since April 1, 2009.  (R. at 99-100.)  In a disability report, Plaintiff listed several conditions which he believed prevented him from working, including diabetes, high blood pressure, post-traumatic stress disorder ("PTSD"), memory loss and incontinence.  (R. at 120.)  Plaintiff's application was denied (R. at 59-62) and he sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 63-65.)  ALJ Mary Ann Poulose held a hearing on February 3, 2011.   (R. at 23-54.)  On April 28, 2011, ALJ Poulose issued an opinion which found Plaintiff to not be disabled.  (R. at 13-19.)  In September 2012, the Appeals Council denied Plaintiff's request for review.  (R. at 1-3).

Plaintiff then sought review in this Court.  *See* Case No. 2:12-cv-14532-PJD-RSW, *Wilmore v. Comm'r of Soc. Sec.*  In January 2014, Judge Duggan rejected in part a recommendation by Executive Magistrate Judge Whalen and remanded the case to the Commissioner for further proceedings because "an April 2010 notation in medical records from the Department of Veterans Affairs ('VA') indicat[ed] that Plaintiff has an eighty (80) percent service-connected disability. A

review of the ALJ's decision reveals that the ALJ gave this evidence no consideration at all." *Wilmore v. Comm'r of Soc. Sec.,* 2014 WL 320072, at *3 (E.D. Mich. Jan. 29, 2014).  On remand, the Appeals Council issued an order which vacated ALJ Poulose's decision and remanded the matter to an ALJ "for further proceedings consistent with the order of the court."  (R. at 452.)

On remand, the matter was reassigned to ALJ Timothy Christensen, who held a hearing on January 9, 2015.  (R. at 361-371.)  In March 2015, ALJ Christensen issued an opinion which found Plaintiff to not be disabled.  (R. at 344-355.)  In January 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 318-322.)  ALJ Christensen's decision thus became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

### B.    Plaintiff's Medical History

Given the lengthy procedural history of this action, the voluminous record and the relatively narrow issues before the Court, a detailed recitation of Plaintiff's medical history is not necessary.  Instead, the Court will refer to Plaintiff's medical history as necessary in the analysis section, *infra*.

### C.    Proceedings In Case 12-cv-14532

#### 1.    Hearing Before ALJ Poulose

##### a.  Plaintiff's Testimony

In his report and recommendation, Executive Magistrate Judge Whalen summarized Plaintiff's testimony at the February 2011 hearing before ALJ Poulose as follows:

Plaintiff offered the following testimony:

He currently lived with his wife and two adult children (Tr. 27). He retired from his job as an automotive machinist in April, 2009 (Tr. 28). He estimated that his work required him to stand up to 70 percent of the workday (Tr. 28). He accepted a buyout from General Motors in 2009 due in combination to worsening health conditions and his employer's financial instability (Tr. 29). Plaintiff experienced foot and knee problems due to diabetic neuropathy (Tr. 29). He took insulin twice a day (Tr. 29). In addition, he required frequent bathroom breaks due to incontinence (Tr. 29). Prior to working as a machinist, Plaintiff worked in a general store for 20 years, adding that the job did not require him to lift more than six pounds (Tr. 31–32).

Plaintiff held a current driver's licence [sic] and did not experience significant problems in self[-]care activities except those requiring balancing (Tr. 32). He baked chickens and did not have problems putting dishes in the dishwasher (Tr. 33). He denied laundry chores, vacuuming, taking out trash, or yard work (Tr. 33). He continued to grocery shop and could lift a gallon of milk (Tr. 34). He was unable to walk more than the length of a block or sit for more than 45 minutes without breaks (Tr. 35). He had a cane, but it had not been prescribed by a doctor (Tr. 37). He denied manipulative limitations (Tr. 37–38). Cold weather exacerbated knee problems (Tr. 38). He avoided using stairs, noting that when climbing stairs, he changed steps "sideways ... one at a time" (Tr. 38). He currently took medication for hypertension, hyperlipidemia, diabetes, and a heart condition (Tr. 39–40). He was treated by Dr. Joseph Levy at the Veterans' Administration ("VA") Hospital (Tr. 40).

Plaintiff experienced intermittent foot tingling with a burning sensation and numbness (Tr. 42). His need for frequent bathroom visits created nighttime sleep disturbances and constricted his daytime activities (Tr. 43). He required a bathroom visit every 45 minutes

during the day and every two hours during the night (Tr. 45). He opined that incontinence was due to kidney problems brought on by diabetes, adding that he had recently been contacted by the VA hospital to discuss the results of a recent retinopathy screening (Tr. 44–45). Eight months prior to the hearing, he underwent a procedure to his right eye (Tr. 46).

In response to questioning by his attorney, Plaintiff reported that he experienced some degree of hearing loss accompanied by ringing in the left ear (Tr. 46–47). Daytime fatigue required him to take two naps each day (Tr. 49). He experienced some degree of Post Traumatic Stress Disorder ("PTSD") but coped with the condition by going to horse races where he would "holler and ... let it out" (Tr. 50).

*Wilmore v. Comm'r of Soc. Sec.*, 2013 WL 7117284, at *1-2 (E.D.Mich. Nov. 7, 2013), *report and recommendation adopted in part and rejected in part at* 2014 WL 320072 (E.D. Mich. Jan. 29, 2014) (Duggan, J.).

### b.  Vocational Expert Testimony

As related by Executive Magistrate Judge Whalen:

VE Julie Lynn Bubbles [sic, should be Bose] classified Plaintiff's past work as a machinist as exertionally medium and skilled and work as a tool crib clerk (as performed) as light/semiskilled (Tr. 52). The VE testified that the job of tool crib clerk, as performed by Plaintiff, would not prevent hourly bathroom breaks in addition to a morning, lunch, and afternoon break (Tr. 52). She found that the job of tool crib clerk would allow the individual to be "off task" up to 15 percent of the workday (Tr. 52). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 52).

2013 WL 7117284, at *3 (footnote omitted).

### 2. ALJ Poulose's Decision

Executive Magistrate Judge Whalen succinctly summarized ALJ Poulose's decision as follows:

> Citing Plaintiff's medical records, ALJ Poulose found that Plaintiff experienced the severe impairments of high blood pressure and diabetes mellitus but that the conditions did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15–16). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" limited by the need to use the restroom hourly (Tr. 16). Citing the VE's job findings, the ALJ found that Plaintiff could perform his past relevant work as a machinist and tool crib clerk (Tr. 19).
>
> The ALJ discounted Plaintiff's claims of disability, citing medical records supporting her finding that symptoms of diabetes mellitus did not prevent performance of his past relevant work (Tr. 16). She noted that examinations performed in both April and November, 2009 showed that Plaintiff had good balance and a normal gait (Tr. 17). She cited April, 2010 treatment notes showing that blood sugar levels were well controlled (Tr. 18).

*Id.*

### 3. Proceedings In This Court

When he sought review in this Court of ALJ Poulose's decision in case 12-cv-14532, Plaintiff raised two claims for relief.  First, he contended that "the ALJ erred by omitting diabetic neuropathy of the lower extremities from the Step Two 'severe' impairments."  *Id.* at *4.  Second, he argued ALJ Poulose erred "by failing to consider an April, [sic] 2010 notation by an optometrist indicating that [Plaintiff] had an 80 percent service-connected disability."  *Id.* at *5.

6

Executive Magistrate Judge Whalen rejected the diabetic neuropathy argument, concluding that "[w]hile neuropathy is not included among the Step Two findings, the ALJ found that diabetes mellitus was a severe impairment (Tr. 15). Plaintiff does not dispute that the alleged symptoms of neuropathy were a complication of diabetes mellitus[,]" and "the ALJ specifically addressed the alleged lower extremity limitations as a result of neuropathy at the subsequent steps of the sequential analysis." *Id.* at *4. Plaintiff did raise any diabetic neuropathy-based arguments in his objections to Judge Duggan, thus waiving them. *See, e.g., Murphy v. Lockhart*, 826 F.Supp.2d 1016, 1027 (E.D.Mich. 2011) ("A party's failure to file objections to the report and recommendation waives any further right to appeal.") (citing *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987)).

Executive Magistrate Judge Whalen also recommended rejecting Plaintiff's argument about the ALJ's treatment of the VA disability finding, reasoning that "[i]n the absence of a 100 percent disability finding by the VA, the ALJ is not required to adopt or even consider the VA's determination." *Id.* at *6. Plaintiff objected and Judge Duggan agreed with Plaintiff. Specifically, Judge Duggan concluded that "[c]ontrary to the conclusion reached in the R & R [report and recommendation], the absence of cases indicating that ALJ's [sic] do not have an obligation to consider anything other than a 100 percent disability finding by

another governmental agency is not dispositive. Further, the absence of case law does not support a conclusion that this is the law." 2014 WL 320072, at *4. Because he believed there was a factual issue about whether Plaintiff was entitled to benefits, Judge Duggan remanded the matter to the Commissioner "for further consideration of the [VA] evidence." *Id.*

### D. The Proceedings on Remand

#### 1. Hearing Before ALJ Christensen

Although a VE was present, only Plaintiff testified at the January 9, 2015 hearing on remand before ALJ Christensen. At the beginning of the hearing, the ALJ and Plaintiff's counsel discussed the scope of the remand. The ALJ noted that the remand was based on the failure to consider the VA disability evidence, an assertion with which Plaintiff's attorney agreed, but his attorney also stressed that the Appeals Council had vacated the entirety of ALJ Poulose's decision. (R. at 364.) The following relevant colloquy then occurred:

ALJ: No, he's entitled to a de novo hearing.

ATTY: Correct.

ALJ: --correct?

ATTY: Correct.

ALJ: But, I mean, the testimony is not going to change.

ATTY: No, the testimony is not going to change.

ALJ:  We got a record of that.

ATTY:  Okay, okay.

ALJ:  Right?

ATTY:  Yeah, that's fair.

ALJ:  I think that—I mean, I don't see, see it as complicated, but I do
need additional information.

ATTY:  Okay.

(R. at 364-365.)

Plaintiff then testified that the VA gave him an 80% disability rating in 2008
or 2009.  (R. at 365.)  Plaintiff was asked if he was able to work and perform his
job duties until the alleged onset date of April 1, 2009, other than needing to use
the restroom every forty-five minutes, to which Plaintiff responded affirmatively
but added a caveat that his "last year was a struggle."  (R. at 366.)  In response to
the ALJ's request, Plaintiff's counsel agreed to provide the orders from the VA
regarding Plaintiff's disability.  (R. at 368.)[1]  However, when Plaintiff's counsel
was given the opportunity to question Plaintiff she demurred, stating "I think his

---

[1] The VA's February 2008 decision finding Plaintiff to be 80% disabled is at R.
477-485.  The disability rating is based on Plaintiff having a combination of PTSD,
diabetes, diabetic neuropathy and peripheral neuropathy.  (R. at 479.)  There is
also a February 2015 letter to Plaintiff from the VA in the record which reflects,
without explanation, that Plaintiff was considered 100% disabled by the VA as of
June 1, 2012.  (R. at 486.)  Notably, that letter was written about five weeks after
the hearing before ALJ Christensen and about three and one-half years after
Plaintiff's date last insured.

testimony was—I reviewed all of his testimony when we appealed it and his

testimony was great on all the topics, that I wouldn't want to do it again due to the

lapse in time. . . . So I would, I would actually agree with not doing his testimony

again."  (R. at 369.)

## 2**. ALJ CHRISTENSEN'S DECISION**

On March 25, 2015, ALJ Christensen issued his decision.  (R. at 344-355.)

At the outset, ALJ Christensen stated that "the findings of ALJ Poulose remain

appropriate" and her decision thus was "adopt[ed] . . . in its entirety . . . ."  (R. at

348.)  At Step 1 of the sequential evaluation process,[2] the ALJ found that Plaintiff

had not engaged in substantial gainful activity since his alleged onset date of April

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential
review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet
      or equal the criteria of an impairment set forth in the Commissioner's
      Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the
      claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and
      residual functional capacity, can the claimant perform other work
      available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

1, 2009 through his date last insured, July 31, 2011.  (R. at 350.)  At Step 2, the

ALJ found that Plaintiff's severe impairments were high blood pressure and

diabetes mellitus.  (R. at 350.)  At Step 3, the ALJ found that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled one of

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R.

at 352.)  Prior to undertaking Step 4, the ALJ evaluated Plaintiff's residual

functional capacity ("RFC")[3] and determined that he had the capacity "to perform a

full range of work at all exertional levels but with the following nonexertional

limitations:  use of the restroom hourly."  (R. at 352.)

　　　ALJ Christensen explicitly rejected the VA's disability findings for two

main reasons.  First, Plaintiff was found to be 80% disabled by the VA in February

2008, yet he was able to continue to work (i.e., perform substantial gainful activity)

*through March 30, 2009*.  (R. at 353.)  Second, the ALJ stated that the VA's

disability determination cannot be given "any controlling weight" because the

VA's findings were "not based on the necessary clinical and objective medical

findings required by the Social Security Regulations."  (R. at 354.)  The ALJ then

found at Step 4 that Plaintiff could perform his past work as a machinist and tool

---

[3] A claimant's "residual functional capacity" is an assessment of the most he or she
can do in a work setting despite his or her physical or mental limitations. 20
C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.
2002).

crib clerk, and thus concluded that Plaintiff was not disabled under the Social

Security Act from the April 1, 2009 onset date through the July 31, 2011 date last

insured.  (R. at 355.)

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

In the table of contents and statement of questions presented portions of his motion for summary judgment, Plaintiff lists only one issue: the ALJ failed to comply with the Appeals Council's remand order.  (DE 13 at 3, 5.)  In the body of his motion, however, the Court construes Plaintiff as raising two different issues.[4] First, Plaintiff contends he was "incapable of performing his past relevant work considering the severity of his peripheral neuropathy as documented by the consultative examiner as well as the VA medical records . . . ."  (*Id.* at 16) (citations omitted).  Second, Plaintiff contends "the ALJ failed to develop the record pursuant to SSR [Social Security Ruling] 96-6p."  (*Id.* at 17.)

The Commissioner opposes Plaintiff's motion, asserting that she is entitled to summary judgment because substantial evidence supports the ALJ's conclusions.  I agree with the Commissioner.

---

[4] Section B of the Undersigned's Practice Guidelines for Social Security cases explicitly prohibits raising issues in the body of a motion for summary judgment which are not also contained in the list of issues presented section of the motion. Specifically, the Practice Guideline provides in relevant part that "[a]ny issue addressed in the brief that is not both 1) included in Issues Presented and 2) labeled as a section heading within the brief, will not be considered by the Court." Counsel is strongly cautioned that any failure to follow the Court's Practice Guidelines in the future will not be permitted.  However, because the Practice Guidelines at issue is of fairly recent origin and because of this case's protracted, yo-yo nature, the Undersigned will leniently address these previously unidentified, stealth-like issues on their merits, albeit with some irritation.

### 1.   Failure to Comply With the Appeals Council's Order

Plaintiff contends "[t]he ALJ Erred When He Failed to Comply With the Appeals Council's Prior Remand Order[.]"  (DE 13 at 3.)  However, Plaintiff does not develop this argument by actually explaining how the ALJ failed to comply with the Appeals Council's remand order.  As the Commissioner accurately asserts, Plaintiff "does not point to any language in that order that was ostensibly violated, let alone suggest how the ALJ contravened such language."  (DE 15 at 11.)  The Court will not search the record with a fine-toothed comb to develop arguments for Plaintiff.  *See, e.g., Davis v. Comm'r of Soc. Sec.,* 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("Having already concluded that the treating physician's [Dr. Verma's] opinions were properly discounted, the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted at* 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).

Moreover, review of the record leads to a conclusion that ALJ Christensen did comply with the Appeals Council's order.  The Appeals Council vacated ALJ Poulose's decision and remanded for proceedings consistent with Judge Duggan's

order—i.e., the matter was remanded for the ALJ to expressly take into account the VA's disability findings.  The Appeals Council did not mandate a finding that Plaintiff was disabled for Social Security purposes, nor could it properly have done so, since the VA's disability findings simply are not binding on the Commissioner. *See, e.g., Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x 508, 510 (6th Cir. 2013) ("The administrative law judge was not bound to accept the disability rating made by the Veterans Administration. The social security disability rules are clear: A decision by any ... other governmental agency about whether you are disabled ... is based upon its rules and is not our decision about whether you are disabled.... We must make a disability ... determination based on social security law. Therefore, a determination made by another agency that you are disabled ... is not binding on us. 20 C.F.R. § 404.1504.") (block quotation omitted).

Instead, the ALJ was only remanded by both this Court and the Appeals Council "for futher consideration of the [VA] evidence." *Wilmore*, 2014 WL 320072, at *4, directing the ALJ to merely "consider" the VA's findings is proper because the issue of disability is one expressly reserved to the Commissioner. 20 C.F.R. §404.1527(d)(1).  In addition, "[c]laimants under the Social Security Act are subject to a more rigorous standard than those under the Veteran's Administration, and thus the VA's rating decision is not necessarily controlling." *Paul v. Astrue*, 827 F.Supp.2d 739, 743 (E.D. Ky. 2011).

16

ALJ Christensen discussed the VA's findings and the evidence of record at length before concluding that Plaintiff was not disabled pursuant to the relevant Social Security rules and guidelines. (R. at 353-355.)  In doing so, he fully complied with this Court's remand order and cured the issue which had been overlooked by the original ALJ.  Moreover, the Appeals Council itself expressly found that ALJ Christensen had complied with *its* order implementing the remand. (R. at 319) ("Accordingly, the decision complied with the instruction to consider the VA rating evidence.").  Plaintiff's argument should be rejected.

## 2.  Peripheral Neuropathy

Plaintiff's argument, as the Court construes it, is that the ALJ erred in his RFC assessment by finding Plaintiff to be able to perform his past work when, in reality, he is unable to do so due to his peripheral neuropathy.  Plaintiff's argument is unduly terse and consists mainly of generalities and conclusory statements.[5]

Plaintiff contends that, in addition to his own testimony before ALJ Poulose about feeling tingling in his feet (R. at 36), there is medical evidence to support a finding of peripheral neuropathy in unspecified records from the VA and the notes of the consultative examiner, Sonia Ramirez, M.D.  (R. at 230-236.)  Plaintiff, however, does not specify which portion(s) of the VA records support his

---

[5] In its entirety, the argument section of Plaintiff's brief is slightly under four pages long.  *See* DE 13 at 15-18.

conclusion that peripheral neuropathy renders him unable to work.  Instead,

Plaintiff broadly asserts that:

> Plaintiff clearly testified that he had difficulty with sitting, standing,
> and walking due to foot numbness (Tr. 41-43). In addition, he testified
> to experiencing a burning-like sensation in his feet. Therefore, there is
> testimony as well as objective medical findings both from the
> consultative examiner, Dr. Ramirez[,] as well as the VA medical
> records which document a diagnosis of peripheral neuropathy with
> significant limitations. Furthermore, his testimony as well as the
> objective medical evidence supports his inability to perform his past
> relevant work as an auto machinist which was medium in exertion and
> would require him to stand and/or walk up to six hours a day. Clearly,
> Plaintiff would be incapable of performing his past relevant work
> considering the severity of his peripheral neuropathy as documented
> by the consultative examiner (Tr. 230-238) as well as the VA medical
> records in (Tr. 177-220, 254-317).

(DE 13 at 16.)  Even assuming that Plaintiff has not already waived this issue or

that it is not precluded by the limited scope of the record, Plaintiff's failure to

make a proper, fully developed argument is a fatal omission.  *See, e.g., Jones v.*

*Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is

not the Court's function to search the administrative record for evidence to support

[Plaintiff's] 'argument' or find law supporting [his or] her claims. This Court does

not conduct a de novo review in social security proceedings, and certainly cannot

be expected to craft an argument on [Plaintiff's] behalf.") (quotation marks and

citations omitted).  It is not reasonable to cite 115 pages of medical records *en*

*masse* and essentially say to this Court "You go find it" or "Trust us, it's in there,"

much less with no analysis or discussion.

In addition, as the Commissioner accurately asserts, any argument by Plaintiff that he is entitled to relief because the ALJ failed to list peripheral neuropathy as a severe impairment at Step 2 is without merit. ALJ Christensen found Plaintiff's diabetes and high blood pressure to be severe impairments, meaning that the failure to list peripheral neuropathy as an additional severe impairment is "legally irrelevant." *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) ("Anthony argues that the ALJ erred by failing to determine that all of Anthony's various impairments were 'severe' at step two. In the Sixth Circuit, the severity determination is a de minimis hurdle in the disability determination process. . . . Anthony's argument, however, is misguided. The ALJ specifically found that Anthony's seizure disorder, cognitive disorder, and the after-effects of his broken leg qualified as severe impairments. Anthony therefore cleared step two of the analysis. This caused the ALJ to consider Anthony's severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of Anthony's impairments were not deemed to be severe at step two is therefore legally irrelevant.") (quotation marks, citations and paragraph break omitted). ALJ Christensen, moreover, did discuss peripheral neuropathy, albeit somewhat obliquely as he did not use that term, when he mentioned Dr. Ramirez's findings

regarding things like Plaintiff suffering from numbness and diminished sensation in his feet.  (R. at 354.)[6]

Furthermore, substantial evidence supports the ALJ's RFC determination. First, the peripheral neuropathy argument appears to be, at its core, the same argument Plaintiff raised in this Court previously regarding ALJ Poulose's omission of diabetic neuropathy as a severe condition.[7]  As Executive Magistrate Judge Whalen noted, ALJ Poulose adequately addressed Plaintiff's neuropathy in her findings.[8]  Plaintiff did not object to that portion of Executive Magistrate Judge

---

[6] Neuropathy is defined as "an abnormal and usually degenerative state of the nervous system or nerves; *also*:  a systemic condition (as muscular atrophy) that stems from a neuropathy[.]"  https://www.merriam-webster.com/dictionary/neuropathy#medicalDictionary (last visited December 9, 2016).  Peripheral neuropathy is defined as "a disease or degenerative state (as polyneuropathy) of the peripheral nerves in which motor, sensory, or vasomotor nerve fibers may be affected and which is marked by muscle weakness and atrophy, pain, and numbness[.]"  http://www.merriam-webster.com/dictionary/peripheral%20neuropathy#medicalDictionary (last visited December 9, 2016).

[7] The Mayo Clinic lists diabetes mellitus as "[o]ne of the most common causes" of peripheral neuropathy.  http://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/home/ovc-20204944 (last visited December 1, 2016).

[8] Specifically, he concluded:

> Plaintiff's claim of limitations as a result of neuropathy, if credited, would qualify as "work-related" limitations. However, the omission of the word "neuropathy" from the severe impairments does not warrant remand. While neuropathy is not included among the Step Two findings, the ALJ found that diabetes mellitus was a severe impairment (Tr. 15). Plaintiff does not dispute that the alleged symptoms of neuropathy were a complication of diabetes mellitus.

Whalen's report and recommendation, and Judge Duggan adopted that portion of the report and recommendation.  2014 WL 320072, at *4.  Plaintiff has cited to no evidence which should cause the Court to revisit that earlier holding, which remains binding.  *See, e.g., Westside Mothers v. Olszewski,* 454 F.3d 532, 538 (6th Cir. 2008) ("The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (quotation marks and citation omitted).

---

    Moreover, the ALJ specifically addressed the alleged lower extremity limitations as a result of neuropathy at the subsequent steps of the sequential analysis. In finding that the condition of diabetes mellitus did not meet or medically equal a listed impairment at Step Three, the ALJ noted that "the medical evidence of record fail[ed] to demonstrate neuropathy indicated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station" (Tr. 16 citing Listings 9.08, 11.00C). This finding is well supported by the treating and consultative records.

    The ALJ once again referenced the limitations alleged as a result of neuropathy in providing a rationale for her rejection of Plaintiff's claims, noting that while objective testing showed "moderate peripheral neuropathy," both April, 2009 treating records and November, 2011 consultative findings show that Plaintiff had "no problems standing or walking" and had a normal gait with good balance and coordination (Tr. 17). Because the ALJ addressed both the allegations of neuropathy and adequately discussed her reasons for discounting them, the omission of "neuropathy" at Step Two does not constitute error, much less grounds for remand.

2013 WL 7117284, at *4-5.

Second, even laying aside both this Court's previous holding and Plaintiff's motion's structural deficiencies, the ALJ's RFC determination is supported by substantial evidence. Despite recognizing Plaintiff's neuropathy, Dr. Ramirez noted that "there were no problems with him [Plaintiff] standing, walking on toes and heels. Balance was normal. Gait was normal." (R. at 231.)[9] In addition, in April 2009 Plaintiff told examining physician D. Aprahamian, M.D., that he "is able to do all of his normal activities[,] he just has to live with the discomfort. . . . He states that the only affect he can think of is that he believes that diabetes makes him urinate every 2-hours . . . ." (R. at 192). Dr. Aprahamian's examination found that Plaintiff's balance was good and his gait was normal. (R. at 193.) Those physicians' notes, many of which were explicitly discussed by ALJ Christensen (R. at 354), are substantial evidence to support his RFC determination. Indeed, Plaintiff has not cited to specific medical evidence, other than the VA's disability determination, that would contradict the ALJ's findings.

In short, Plaintiff has not pointed to specific evidence that he is more functionally limited than ALJ Christensen concluded in his RFC assessment. To the contrary, Plaintiff reported no functional limitations, other than frequent need

---

[9] Though not explicitly cited by ALJ Christensen, the Court notes that in December 2009, reviewing physician Tariq Mahmood, M.D. also recognized Plaintiff's neuropathy but nonetheless noted that Plaintiff "has no difficulty of [sic] standing & walking on toes. Stance is normal. No problem of balance." (R. at 239.) Thus, Dr. Mahmood concluded Plaintiff's condition was "[n]on-severe." (R. at 239.)

to use the restroom, to Dr. Aprahamian, and both Drs. Ramirez and Mahmood concluded Plaintiff had no difficulty standing, walking or balancing. Plaintiff testified before ALJ Poulose that he has trouble with foot numbness (R. at 41-43) but an ALJ is not required to accept a Plaintiff's subjective complaints[10] and Plaintiff has not argued that the ALJ's diminished credibility findings were improper. The ALJ addressed the VA's disability assessment and explained why that assessment did not mean Plaintiff is disabled under the applicable Social Security regulations and rules. Because substantial evidence supports ALJ Christensen's conclusions, his decision should not be disturbed.

### 3.   Failure to Develop the Record

Plaintiff asserts ALJ Christensen was required by SSR 96-6p, 1996 WL 374180 (July 2, 1996), to obtain a new consultative exam due to VA records adduced after Dr. Ramirez's November 2009 consultative exam. Although not quoted by Plaintiff, presumably his argument is based upon the following portion of SSR 96-6p:

> [A]n administrative law judge and the Appeals Council must
> obtain an updated medical opinion from a medical expert in the
> following circumstances:

---

[10] *See, e.g., Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Nevertheless, an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

> * When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

> * When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

1996 WL 374180, at *3-4. "SSR 96–6p thus requires that the ALJ obtain an updated medical opinion *only* when the ALJ believes that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment." *Courter v. Comm'r of Soc. Sec.*, 479 Fed. App'x 713, 723 (6th Cir. 2012) (quotation marks and citation omitted).

ALJ Christensen did not specifically address whether a new consultative exam was required under SSR 96-6p. However, Plaintiff has not cited to, nor has the Court independently located, anything in the record to show that he contemporaneously requested a new consultative exam. Indeed, at the hearing before ALJ Christensen, Plaintiff's attorney declined to even question Plaintiff about his disability because counsel believed the testimony would not differ from that given in the hearing before ALJ Poulose. (R. at 364.) The failure to contemporaneously request a new consultative exam greatly undercuts Plaintiff's argument. *See, e.g., Kelly v. Comm'r of Soc. Sec.*, 314 Fed. App'x 827, 831 (6th Cir. 2009) (rejecting an argument that a new consultative exam was required, in

part because "[t]he ALJ specifically considered the 2003 and 2004 teachers' reports. . . . He did not specifically find that the new teachers' reports did not require an updated medical opinion, but it appears that Mrs. Kelly's counsel did not make that argument to the ALJ.").

Moreover, Plaintiff only generically refers to things like the VA changing his disability rating from 80% to 100% to support his contention that a new consultative exam was proper. *See* DE 13 at 17 ("The medical evidence from the VA showed a progression of his medical conditions. Clearly, where the disability rating changed from 80% on February 28, 2008 to 100% in 2012 there is further evidence to be considered."). However, Plaintiff's date of last insured was in July 2011, well before the 2012 change in his status by the VA. Moreover, Plaintiff has not shown, nor has the Court independently located, any specific statement or medical findings in the record explaining why the VA increased Plaintiff's disability rating.

Plaintiff also mentions unspecified medical records demonstrating his allegedly worsening condition, asserting that "[t]he medical evidence from the VA shows a worsening of his peripheral neuropathy which the ALJ minimalizes his symptomology." (DE 13 at 18.)[11] Plaintiff's undeveloped argument is insufficient to meet his burden to show that "new" evidence may have changed the consultative

---

[11] The quoted sentence is puzzling, as the odd phrase "which the ALJ minimalizes his symptomology" appears unrelated to the rest of the sentence.

examiners' findings.  *Courter*, 479 Fed. App'x at 723 ("Claimant thus must demonstrate either that the school records suggest that she qualified as mentally retarded under Section 12.05 or that the ALJ believed the school records may have changed the experts' findings.").  In fact, Plaintiff does not specify what listing(s) he believes the "new" evidence would show that he meets.

There will always be a gap between the date of a consultative exam and the issuance of an ALJ's decision.  *Kelly*, 314 Fed. App'x at 831.  However, "[a]bsent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand."  *Id.* (quoting with approval a magistrate judge's report and recommendation).  Because Plaintiff has not made a "clear showing" of how any "new" evidence renders the prior opinions untenable, and because the ALJ discussed the fact that many of the "new records" were "for treatment well beyond the claimant's date last insured of July 31, 2011[,]" (R. at 350), the Court should not disturb ALJ Christensen's decision.

## G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports ALJ Christensen's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for

summary judgment (DE 13), **GRANT** Defendant's motion for summary judgment

(DE 15), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: December 9, 2016             s/Anthony P. Patti
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on December 9, 2016, electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case Manager for the
                                    Honorable Anthony P. Patti